## Christian H. Buhl v. Township Board of Springwells.

*Construction of statute.* The act of March 21, 1865, entitled "An act to authorize certain townships in the State of Michigan to raise money by tax, to refund advances made for bounty purposes," applies only to the two townships,—Nankin in Wayne County, and Delta in Eaton County,—named in the first section.

The first section of the act expressly authorizes the two townships named to vote by ballot on the question of raising money for the purposes specified. The second section provides that "it shall be the duty of the township board of any township of said counties, which shall have voted in favor of allowing and paying the claims mentioned in the preceding section," &c., and specifies the kind of claims to be audited, and the assessment of a tax for their payment. The language incidentally used in this section, and which apparently applies to all townships of said counties, is not to be construed as conferring the powers therein specified upon any other townships than the two named in the first section. The whole act is to be construed together.

*Heard July 6th and 7th. Decided July 11th.*

Appeal from Wayne Circuit, in Chancery.

This was a bill to quiet title. The facts are as follows:

Certain persons in the township of Springwells, Wayne County, during the year 1864, paid money for various purposes to fill the quota of soldiers to be raised in that town. The money was paid for substitutes, recruits, &c., as each person saw fit, to avoid a draft, and without any pledge or promise of any kind for repayment.

An act was passed and approved March 21, 1865, (Session

Laws, 1865, p. 686,) specially authorizing the electors of Delta and Nankin to vote and raise money so advanced or paid, by tax on the real and personal property in those townships. The first section of the act names the said two towns, and is confined to them:—the second section authorizes "the Township Board of any township of said counties which shall have voted," &c., to allow similar claims, &c.

At a special meeting of the electors, they voted to raise the money paid for such purposes. Claims were allowed by the Board, consisting of defendants Ranspach, Burkum and Markey, and the amount allowed, $9,300, was extended on the tax roll; a portion of which, exceeding $100, was, with other township taxes, levied and assessed on the real estate of appellant, and the tax roll with a warrant to collect was delivered to defendant Cooper, as collector.

The complainant thereupon filed his bill to have the lien created by this alleged tax removed. The appellant paid the State and County tax, leaving this war tax and the town tax, which were assessed together, unpaid.

The bill was dismissed, and complainant appealed.

*D. C. Holbrook* and *Maynard, Meddaugh & Swift*, for complainant.

1. The act of March 21, 1865, is unconstitutional.

*a.* The object is not expressed in the title in accordance with the provisions of Sec. 20, Art. 4, of the Constitution.

*b.* The tax is for the private benefit of individuals, and to refund money paid to relieve them from the performance of a public and personal duty, and not for the performance of that duty.

This is not *taxation.— Const. Art. XIV., sec.* 11; 2 *Mich.* 566; 5 *Id.* 274.

*c.* Money cannot be raised by taxation for private purposes merely.—39 *Penn. St.* 73; 21 *Id.* 147–167; 2 *Black U. S.* 515; 13 *Am. L. R.* 661–678; 13 *N. Y.* 143; 19 *Id.* 116; 34 *Barb.* 76.

2. The statute was only intended to apply to the two townships mentioned in the first section.

*a.* If it had been intended to apply to all the townships in both counties, the act would naturally have been entitled "An Act to authorize the townships in the counties of Wayne and Eaton," or "in certain counties," "to raise money, &c."

*b.* The first section authorizes the townships named to determine whether they will raise a tax, and within certain limits to fix the amount, that is, as we claim, the sum per man. It does not provide for laying a tax or for auditing claims. The second section, therefore, is needed to complete the object of the statute in regard to the townships named in the first section, and they are embraced within it. If the intention was to give all the townships in the two counties the benefit of the act, why not make both sections apply to them, or why mention only two townships in the first section?

*c.* If all the townships in the counties are provided for in the second section, then the first would be entirely nugatory.

*d.* There is nothing in this statute, (unless by implication,) or in any other which authorizes any of the townships, except those named in the first section, to vote to allow and pay the claims above mentioned, and as no township, without such authority from the Legislature, could lawfully levy such a tax, the statute must be so construed as to limit its effect to the townships named in the first section. The phraseology of the second section of this statute is so much like that of the second section of a similar statute of the same session, pp. 271–2, that it is not improbable that the former was copied from the latter, and that there was an oversight in not adapting the copy to the different circumstances.

*G. V. N. Lothrop* and *J. J. Speed,* for defendants.

1. The act of March 21, 1865, is constitutional.

The tax contemplated is within the legitimate exercise of the taxing power.—8 *Mich.* 274; *Id.* 320.

BUHL *v.* TOWNSHIP BOARD OF SPRINGWELLS.

*a.* While the Legislature may not enforce mere private duties and obligations as between individuals, it may, and it is its duty to enforce such obligations when they concern the public, and their payment or performance is due from the public.—*Am. L. Reg. (Sept.* 1865) 661; *Id. (Feb'y* 1866) 202; 18 *Barb.* 615; 3 *Denio,* 399; 19 *N. Y.* 116.

2. Does the act of March 21st apply to any towns excepting those that had voted prior to the passage of the act, in favor of allowing and paying the claims?

The town of Springwells had not, prior to March 21st, 1865, voted in favor of allowing these claims.

Counsel for complainant claim that the words "shall have" in the second line of the second section should be construed to mean "has," so that the line would read, "of any township of said counties which has voted," &c.

*a.* The first section evidently refers to the future, and there is no reason why we should say the second refers to the past.

*b.* We can see no good reason why the Court should say the Legislature used bad grammar, as it must if it says that body intended by "shall have" to refer to the past.

*c.* "Shall have voted" is the second future or future perfect of the verb "vote." According to grammar, as we understand it, the Legislature intend to declare, "it should be the duty of the Town Board of any township which, at a period, future as to the passage of the act, might vote, but after the vote should be taken, to audit and allow the claims," &c.

*d.* When a new rule of law is declared, it never looks backward, unless it is so enacted in the most unequivocal manner. —7 *Conn.* 557; 2 *Seld.* 463; 31 *Penn. St.* 301.

CHRISTIANCY J.

Two questions are presented in this case: 1st, Whether the act of March 21, 1865, "to authorize certain townships in the State of Michigan to raise money by tax to refund advances made for bounty purposes," applies to any other townships

14 MICH.—2 J.

except the two specially mentioned; and, 2d, Whether the act is constitutional.    The act is in the following words:

" *Section* 1.  *The People of the State of Michigan enact,* That it shall be lawful for the qualified electors of the township of Nankin, in the county of Wayne, and the township of Delta, in the county of Eaton, to determine by ballot, at any regular township meeting, or at any special meeting regularly called for that purpose, the question of raising money by tax upon the taxable property of such township, and the amount thereof, for the purpose of paying bounties to persons who have furnished substitutes, or representative recruits, or to drafted men serving in person in the military service of the United States, or of refunding any sum or sums of money which may have been raised, advanced, contributed, subscribed or loaned by any individual or individuals, for the purpose of paying bounties to volunteers, or procuring enlistments into the said military or naval service of the United States, to fill any quota assigned to such township under any call for troops made since the fifteenth day of July, A. D. eighteen hundred and sixty-four: *Provided,* No money shall be raised as aforesaid, to pay bounties for any enlistments since February fourth, eighteen hundred and sixty-five, unless the same had been previously authorized: *And provided further,* That no more than three hundred dollars shall be raised in any township for each person enlisted and mustered as aforesaid, and credited on the quota of such township.

*Sec.* 2.  It shall be the duty of the township board of any township of said counties, which shall have voted in favor of allowing and paying the claims mentioned in the preceding section of this act, to audit and allow all claims which may be presented for that purpose, for money actually paid, as aforesaid, not exceeding in the aggregate the said sum of three hundred dollars to each person, who, not holding a commission, shall be enlisted, mustered and credited, as aforesaid, which allowances shall be made in the same manner as other ordinary claims are allowed, upon satisfactory proof

that the claim is just and proper; and such claims, when audited and allowed, shall be a lawful charge upon any such township, and be paid in the same manner and on like orders as the ordinary expenses of such township are paid; and the amount of such claim allowed as aforesaid, shall be assessed, levied, collected and paid, in the same manner as ordinary expenses or liabilities of such township are assessed, levied, collected and paid.

*Sec.* 3. This act shall take immediate effect.

Approved March 21, 1865."

So far as relates to the question whether it applies to more than the two townships, the act, it must be admitted, is upon any theory of construction awkwardly worded; and, taken literally, somewhat incongruous. But construing it with reference to its expressed objects, the mode provided for attaining them, and the general plan and policy of acts in *pari materia*, as evidenced by the legislation of the State, rather than a literal adherence to particular words, we think it was intended to apply only to the townships specially named.

The opposite view, we think, cannot be well sustained without treating the two sections as each complete in itself, and each providing a different remedy for the same class of claims. But it is manifest that the first section, without the aid of the second, does not reach the object sought to be attained. It simply gives power to the electors of the two townships "to determine by ballot, at any regular township meeting, or at any special meeting," &c., "the question of raising money by tax, and the amount thereof." It provides no mode of rendering the vote effectual, imposes no duty upon any board or officers to levy, collect, or pay, and does not in any manner require the money to be raised; all which, as shown by the previous legislation of the State, has heretofore been deemed necessary in similar cases. It provides no mode of ascertaining or auditing the respective amounts to be

allowed or paid to the various claimants for whose benefit the money was to be raised, and no provision for paying them.

From the nature of the case, and the great variety of claims of different characters and amounts intended to be provided for, and the different state of facts upon which they must depend, it is merely preposterous to say that such a multitude of separate and dependent questions was to be determined by the electors in township meeting, and by *ballot*. It is therefore clear that the electors were not intended or expected to audit, allow, or ascertain the respective sums or claims; but that the amount they were authorized to determine must be either so much per man for the soldiers furnished, or a gross sum; and in either case not to exceed three hundred dollars per man furnished. The second section was therefore necessary. It imposes the duties and provides the machinery for carrying the first section into full effect, and, as we think, this is all it was intended to accomplish. It provides for the auditing, allowance, proof and payment of the very claims mentioned in the first section, and for no others.

But it is urged that the language in the beginning of the second section gives the power to the electors of all the townships in Wayne and Eaton to vote a like tax for like purposes, or that it recognizes votes for that purpose already taken; and if we look only to the letter of the particular phrase, "the township board of any township of said counties," this would seem to have been the intention. But when we look to the whole act, and consider its expressed objects, and the usual and appropriate manner of attaining such objects, this view will be found to lead to gross inconsistencies which we cannot suppose the Legislature intended. 1st, If this section was intended to give such power to all the townships in said counties, then it was wholly useless to give that power in the first section, and to the two townships only; and so far as the first section gives such power, it was utterly useless and nonsensical; yet it is the first section only which expressly and

formally gives the power; the second, upon any interpretation, only giving it by implication.

2d. The provisions of the second section are confined to "the claims mentioned in the preceding section of this act,"—not similar claims, or claims of like character, or the like classes of claims, but "*the claims mentioned in the preceding section.*" The claims mentioned in the preceding section were those in the two townships only. If, therefore, we adhere strictly to the letter, this provision is just as repugnant to the idea of extending the power to other townships, as the words "any township of said counties" are to the view which confines the operation of the second section to the townships mentioned in the first.

Every provision and word of the entire act, and its whole frame and expressed object, are entirely consistent with the construction we have adopted, except the single phrase, "any township," in the beginning of the second section; and we think the considerations already stated sufficiently show that this phrase, in the connection in which it stands, should be construed as "either of said townships." And this construction renders the various provisions of the act more consistent and harmonious.

The conclusion at which we have arrived will, we think, be strengthened by comparing this act with others upon like subjects, and especially with the act of March 14, 1865, passed at the same session, (*Sess. L.* 271), of which the act now in question is almost a literal copy, except that the act referred to applies to all the townships in the counties named in it. A comparison of the two acts will lead to the belief that the whole purpose of the second section was to carry into effect the provisions of the first; and that the act now in question when introduced as a bill, or in some subsequent stage, had in the first section included either all the townships in the State, or all in the counties named; but being subsequently amended so as to confine it to the two townships, the corresponding amendment in the second section, thereby rendered

necessary to its literal harmony, was in the haste of the session overlooked. Such errors in legislation are not unusual, nor easily avoided.

For the reasons given, we think the act cannot be construed as including the township of Springwells; that the vote and proceedings for raising the tax were without authority of law and void. The constitutional validity of the act does not, therefore, in our opinion, arise in the present case.

The decree of the Court below, dismissing the bill, must therefore be reversed, with costs to the complainant in both courts. And a decree must be entered in this Court in accordance with the prayer of the bill.

The other Justices concurred.